IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **JENNIFER PHILLIPS SMITH,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **UNION BANK & TRUST,** ) | |
| ) | Case No: 7:18CV569 |
| ) | |
| Serve: ) | |
| **Rachel Lape** ) | |
| **Registered Agent** ) | |
| **Union Bankshares Corp.** ) | |
| **1051 East Cary Street** ) | |
| **Suite 1200** ) | **JURY TRIAL DEMAND** |
| **Richmond, VA 23219** ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW, Plaintiff Jennifer Phillips Smith (hereinafter, "Ms. Smith" or "Plaintiff"), by counsel, and states as her Complaint against Defendant Union Bank & Trust (hereinafter, "Union" or "Defendant"), the following:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by the Family and Medical Leave Act, as codified under Title 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), and the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA"). *See generally* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

2. Venue is appropriate as the acts and/or omissions of Defendant from which the causes of action arise, occurred in the town of Blacksburg, Virginia, which is located

1

within the County of Montgomery, and which is within the Western District of Virginia, Roanoke Division. *See* 28 U.S.C. § 1391(b)(2).

3. Due to its contacts within the Commonwealth of Virginia, Defendant avails itself to the jurisdiction of this Court.

4. As it relates to Plaintiff's ADA claims, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around January 23, 2018. Plaintiff received a Dismissal and Notice of Rights from the EEOC dated October 23, 2018, attached hereto as **EXHIBIT A**. Plaintiff files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

## II. THE PARTIES

5. Ms. Smith, a resident of Christiansburg, Virginia, was hired by Union in or around November of 2008, and worked on a consistent, full-time basis for Union for nearly nine (9) years, until her unlawful termination on or about August 30, 2017.

6. Union is a privately owned and state chartered commercial bank headquartered in Lincoln, Nebraska, that maintains bank branches in several states.

## III. FACTUAL ALLEGATIONS

7. In or around November of 2008, Ms. Smith was hired by Union as a "Collections Representative II and Foreclosure Specialist" at the Union branch located in Blacksburg, Virginia.

8. During her employment with Union, Ms. Smith's work performance was excellent, and met or exceeded Union's legitimate business expectations.

9. At all times relevant, Ms. Smith suffered from an ADA-recognized disability/serious health condition, specifically chronic, severe neck pain and multiple herniated discs (hereinafter, "Cervicalgia").

10. In the alternative, Union regarded Ms. Smith as disabled.

11. Ms. Smith's Cervicalgia affected her daily life activities, including sitting, standing, and working for an extended period of time. Ms. Smith's disability required several surgeries – including a spinal fusion – and caused her to experience debilitating pain, peripheral neuropathy, fatigue, numbness in her fingers and hands, and tingling in her arms, hands, and shoulders. Additionally, Ms. Smith's Cervicalgia prohibited Ms. Smith from sitting or standing for long periods of time.

12. At all times relevant, however, Ms. Smith could perform the essential functions of her job with or without an accommodation for her disability/serious health condition.

13. When healthy, Ms. Smith was punctual and present for her scheduled shifts.

14. When Ms. Smith's Cervicalgia necessitated time away from work, she always followed proper company leave policies and protocol, informed her supervisors of her need for an accommodation related to leave and attendance, and specifically sought appropriate guidance from Union related to her disability/serious health condition.

15. Accordingly, at all times relevant, Union had knowledge of Ms. Smith's disability/serious health condition, thus triggering Union's duty to advise Ms. Smith of her rights and obligations under the FMLA and ADA.

16. Unfortunately, upon information and belief, Ms. Smith's supervisors held a discriminatory animus against accommodating Ms. Smith's disability, and were resistant to Ms. Smith's use of intermittent leave to manage and treat her Cervicalgia.

17. Specifically, in January of 2017, Ms. Smith's physicians recommended that she have surgery to address and treat three herniated discs in her neck.

3

Case 7:18-cv-00569-GEC  Document 1  Filed 11/14/18  Page 3 of 14  Pageid#: 3

18. In addition, Ms. Smith was required to attend physical therapy appointments several days a week and receive 10-15 pain management trigger point injections monthly or bi-monthly.

19. Ms. Smith then requested, and was approved of, FMLA leave to begin on or about January 27, 2017, and end on or about April 3, 2017.

20. Ms. Smith previously was approved for intermittent FMLA leave on or about April 1, 2016.

21. Upon the recommendation of her physician, Ms. Smith informally requested the reasonable disability-related accommodation of a reduced schedule work week to fully recover from her surgery when she returned to work in April 2017. *See* 42 U.S.C. § 12111(9) (Reasonable accommodations may include job restructuring, and part-time or modified work schedules.)

22. Upon information and belief, Union had previously accommodated other similarly situated employees' reduced time requests in the form of late arrivals and departures, and Ms. Smith's direct manager, Frank Merritt, initially agreed to Ms. Smith's proposed schedule.

23. On or about April 26, 2017, Ms. Smith presented Oni Hunter, Assistant Vice President and Human Resources Business Partner, with a physician's note advising that Ms. Smith should restrict her work hours to no more than 32 hours per week to accommodate her "ongoing chronic neck issues."

24. Ms. Smith was capable of completing her full-time work load within the recommended reduced workweek schedule, and informed Ms. Hunter that she intended to complete all of her assigned work during her recovery.

25. However, despite no perceivable "undue hardship" to Union, Ms. Hunter rejected Ms. Smith's proposed accommodation requests, and informed Ms. Smith that any reduction in Ms. Smith's working hours, even for a limited time period, would be treated as an unexcused absence.

26. Additionally, Ms. Hunter made the outrageous request that Ms. Smith double her recommended dosage of pain medication during working hours so that Ms. Smith could work 40 hours per week.

27. Upon information and belief, Ms. Hunter's discriminatory conduct towards Ms. Smith was intentional, and in retaliation for Ms. Smith's use of federally protected leave to manage her disability/serious health condition.

28. However, and in an attempt to engage in an interactive process with her employer, Ms. Smith discussed her need for an accommodation several times with Ms. Hunter in April and May of 2017.

29. Despite Ms. Smith's efforts, Union refused to provide Ms. Smith with an adequate solution, and instead offered Ms. Smith an ineffective ergonomic chair and a part time bank teller position that would underemploy Ms. Smith and reduce her salary by more than 60 percent.

30. As Ms. Smith's disability/serious health condition required that, after a certain time period of standing or sitting, she lay flat to ease her chronic neck pain, these proposed solutions were insufficient.

31. Faced with this physically and financially unworkable situation, Ms. Smith advised her physician of Union's denial of her reduced workweek schedule request, and asked whether another, lesser accommodation would allow for her appropriate recovery.

5

32. However, Ms. Smith's physician was adamant that Ms. Smith should work no more than 32 hours per week to manage her disability/serious health condition.

33. Ms. Smith relayed her physician's advice to Ms. Hunter, who again refused to engage in an interactive process with Ms. Smith, and advised her on May 26, 2017, that all future absences, tardiness, and early departures would be treated as unexcused absences.

34. Despite Union's discriminatory behavior towards her, Ms. Smith again attempted to work with Union to find a mutually agreeable solution, and presented Ms. Hunter with a second note from Ms. Smith's physician on June 15, 2017, that limited Ms. Smith's reduced schedule of 32 hours per week to a three (3) month period.

35. Additionally, even though Ms. Smith intended and was able to complete all of her weekly job duties within the 32 hour per week period, she offered to receive reduced pay during this time period.

36. Ms. Hunter refused to agree to Ms. Smith's proposed temporary reduced schedule and pay, and again advised Ms. Smith that all future absences would be unexcused, and result in disciplinary action against Ms. Smith.

37. However, Ms. Smith's excruciating post-surgery pain made it impossible for her to work a 40-hour work week. Accordingly, Ms. Smith completed all of her assigned work within the reduced workweek schedule recommended by her physician.

38. Even so, Union penalized Ms. Smith's efficiency with a written Notice of Performance Counseling on June 30, 2017 for unexcused absences.

39. On July 18, 2017, Ms. Smith received a "final" Notice of Performance Counseling, again citing unexcused absences.

40. Additionally, Union ultimately accused Ms. Smith of "overpayment" during her reduced workweek schedule, and attempted to force Ms. Smith to "reimburse" several thousand dollars to Union.

41. On or about August 17, 2017, Ms. Smith was diagnosed with a new herniated disk and spinal stenosis, and was urged by her physician to maintain her recommended reduced schedule.

42. Accordingly, Ms. Smith continued to complete her assigned work within the 32-hour work week recommended by her physician, and Union continued to cite Ms. Smith for unexcused absences.

43. From April 2017 until August 2017, Ms. Smith completed all of her assigned work, revised her accommodation requests, and offered to take a reduced salary during her recovery period. However, Union refused to adequately engage with Ms. Smith and/or address her proposed accommodation requests in any meaningful way, and ultimately terminated Ms. Smith's employment on August 30, 2017.

44. Upon information and belief, no business-related legitimate reason justified the actions Union took against Ms. Smith, as Ms. Smith's work performance was excellent and, until she requested federally protected FMLA leave and related accommodations to treat her disability/serious health condition, she never received any discipline from her employer.

45. Accordingly, Ms. Smith's termination was merely a pretext to unlawful discrimination and retaliation by Union, as Ms. Smith's discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon her disability/serious health condition and/or requests for leave and/or reasonable accommodations.

46. Indeed, the short temporal proximity between the time Ms. Smith requested leave and accommodations related to her disability/serious health condition and her termination supports Ms. Smith's claims for discrimination and retaliation.

47. Ms. Smith suffered a termination, in violation of both the FMLA and the ADA, because Union:

- discriminated and/or retaliated against Ms. Smith for taking FMLA leave;
- discriminated and/or retaliated against Ms. Smith because of her disabilities and/or because of her requests for disability-related leave and accommodations; and/or
- failed to properly accommodate Ms. Smith's disabilities.

48. Because the actions taken by Mr. Merritt, Ms. Hunter, and other Union employees were taken within the scope of their employment, Union is responsible for their actions based upon the doctrine of *respondeat superior*.

**COUNT I: CLAIM FOR DISCRIMINATION
AND RETALIATION IN VIOLATION OF THE FMLA**

49. Ms. Smith incorporates herein by reference the preceding paragraphs of this Complaint.

50. Union is: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

51. Ms. Smith worked for Union for nearly nine (9) years and worked more than 1,250 hours during the twelve (12) month period immediately preceding her termination.

8

52. Ms. Smith properly notified Union of her disability/serious health condition, and of her need for FMLA-qualifying leave, to which she was entitled, to seek treatment for her disability/serious health condition.

53. Union discriminated against Ms. Smith by improperly retaliating against her within short temporal proximity after she exercised the substantive FMLA rights to which she was entitled, and treating her differently, and less favorably, than similarly situated employees not exercising FMLA rights, resulting in Ms. Smith's termination.

54. Union would not have terminated Ms. Smith's employment, nor taken the other discriminatory and retaliatory actions against her, but for Ms. Smith's requests related to, and use of, FMLA leave.

55. Any reasons given by Union for its treatment of Ms. Smith were pretextual, as Ms. Smith's work performance was excellent.

56. Union's discriminatory and retaliatory conduct prejudiced Ms. Smith in that she lost compensation and benefits, sustained other monetary losses, and suffered the loss of her employment as a direct result of Union's violation.

57. As a direct and proximate result of Union's actions, Ms. Smith has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

58. At all times material hereto, Union engaged in unlawful or discriminatory practices with bad faith, malice, or reckless indifference to the federally protected rights of Ms. Smith so as to support an award of liquidated damages.

59. The above-described acts by Union and employees of Union constitute unlawful discrimination and/or retaliation in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq*. ("FMLA").

## COUNT II: CLAIM FOR DISCRIMINATION AND RETALIATION IN VIOLATION OF THE ADA

60. Ms. Smith incorporates herein by reference the preceding paragraphs of this Complaint.

61. At all times relevant to this Complaint, Ms. Smith was a qualified individual with a disability, pursuant to the ADA.

62. Specifically, and at all times relevant, Ms. Smith suffered from a disability/serious health condition, specifically, Cervicalgia – a recognized disability under the ADA - that impaired several of Ms. Smith's daily life activities and/or functions including sitting, standing, and working for an extended period of time.

63. In the alternative, Ms. Smith was regarded by Union as having such impairments.

64. At all times relevant, however, Ms. Smith could perform the essential functions of her job as a Collections Representative II and Foreclosure Specialist with or without an accommodation.

65. Prior to her requests for accommodations, Ms. Smith was performing her work at a satisfactory level and meeting or exceeding the legitimate business expectations of Union.

66. Ms. Smith revealed her disability/serious health condition to her supervisors at Union, and requested the reasonable accommodation of a reduced workweek schedule for a short time period to treat and manage her disability/serious health condition.

67. Union discriminated and retaliated against Ms. Smith by refusing to appropriately engage in a dialogue with her with regard to disability accommodations,

denying Ms. Smith's accommodation requests, demanding that Ms. Smith double her recommended dosage of pain medication during working hours, issuing unwarranted disciplinary actions to her, threatening her/requesting that she return a portion of her salary, and treating Ms. Smith differently, and less favorably than similarly situated employees – ultimately resulting in Ms. Smith's unlawful termination from employment.

68. Union would not have terminated Ms. Smith's employment, nor taken the other discriminatory and retaliatory actions against her, but for Ms. Smith's disability/serious health condition and/or requests for reasonable accommodations.

69. Any reasons given by Union for its treatment of Ms. Smith were pretextual, as Ms. Smith's work performance was excellent.

70. Ms. Smith's termination from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon her disability/serious health condition and/or requests for accommodations.

71. As a direct and proximate result of Union's actions, Ms. Smith has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

72. At all times material hereto, Union engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Smith so as to support an award of punitive damages.

73. The above-described acts by Union and employees of Union constitute disability discrimination and retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

# COUNT III: CLAIM FOR FAILURE
# TO ACCOMMODATE IN VIOLATION OF THE ADA

74. Ms. Smith incorporates herein by reference the preceding paragraphs of this Complaint.

75. At all times relevant to this Complaint, Ms. Smith was a qualified individual with a disability, pursuant to the ADA.

76. Specifically, and at all times relevant, Ms. Smith suffered from a disability/serious health condition, specifically, Cervicalgia – a recognized disability under the ADA that impaired several of Ms. Smith's daily life activities and/or functions.

77. In the alternative, Ms. Smith was regarded by Union as having such impairments.

78. At all times relevant, however, Ms. Smith could perform the essential functions of her job as a Collections Representative II and Foreclosure Specialist with or without an accommodation.

79. Ms. Smith revealed her disability/serious health condition to her supervisors at Union, and requested the reasonable accommodation of a reduced workweek schedule for a certain time period to treat and manage her disability/serious health condition.

80. Prior to her request for disability accommodations, Ms. Smith was performing her work at a satisfactory level and meeting or exceeding the legitimate business expectations of Union.

81. Union failed to accommodate Ms. Smith's disability/serious health condition by refusing to appropriately engage in a dialogue with her with regard to disability accommodations, denying Ms. Smith's accommodation requests, demanding

that Ms. Smith double her recommended dosage of pain medication during working hours, issuing unwarranted disciplinary actions to her, threatening her/requesting that she return a portion of her salary, and treating Ms. Smith differently, and less favorably than similarly situated employees – ultimately resulting in Ms. Smith's unlawful termination from employment.

82. Union would not have terminated Ms. Smith's employment, nor failed to accommodate her, but for her disability/serious health condition.

83. Any reasons given by Union for its treatment of Ms. Smith were pretextual, as Ms. Smith's work performance was excellent.

84. Ms. Smith's termination from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon her disability/serious health condition and/or requests for accommodations.

85. As a direct and proximate result of Union's actions, Ms. Smith has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

86. At all times material hereto, Union engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Smith so as to support an award of punitive damages.

87. The above-described acts by Union and employees of Union constitute failure to accommodate in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

WHEREFORE, Plaintiff Jennifer Phillips Smith prays for judgment against Defendant Union Bank & Trust, and for equitable relief, compensatory, liquidated and/or

13

Case 7:18-cv-00569-GEC   Document 1   Filed 11/14/18   Page 13 of 14   Pageid#: 13

punitive damages, together with prejudgment interest from the date of Ms. Smith's termination from employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully Submitted,

**JENNIFER PHILLIPS SMITH**

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*